Shane M. WHITE, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of the Social Security Administration, Defendant.

No. CIV.A. 1:03CV192.

United States District Court,
N.D. West Virginia.

March 19, 2004.

Mary V. Rehmann, Morgantown, WV, for plaintiff.

Helen C. Altmeyer, Assistant United States Attorney, Wheeling, WV, for defendant.

### ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

KEELEY, Chief Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(B), Rule 72(b), Federal Rules of Civil Procedure and Local Court Rule 4.01(d), the Court referred this Social Security action to United States Magistrate Judge John S. Kaull with directions to submit proposed findings of fact and a recommendation for disposition. On February 17, 2004, Magistrate Kaull filed his Report and Recommendation and directed the parties, in accordance with 28 U.S.C. § 636(b)(1) and Rule 6(e), Fed.R.Civ.P., to file any written objections with the Clerk of Court within ten (10) days after being served with a copy of the Report and Recommendation. The parties did not file any objections.

### I.

On June 26, 2000, Shane M. White ("White"), filed an application for supplemental security income ("SSI") alleging disability since April 1, 1998 due to agoraphobia, panic attacks and anxiety attacks. The Commissioner denied his claim initially and on reconsideration. On September 13, 2001, an Administrative Law Judge ("ALJ") held a hearing at which White appeared in person and by his then counsel, Montie VanNostrand, and testified. A vocational expert ("VE") also testified. On October 11, 2001, the ALJ denied benefits. In an undated decision, the Appeals Council denied White's request for review of the ALJ's denial, making the ALJ's decision the final decision of the Commissioner. On December 30, 2002, White filed this civil action seeking review of the final decision.

### II.

At the time of the ALJ's decision, White was twenty years old and is considered a younger individual under the Act. White has a high school education, which he completed on home schooling, and no past relevant work experience.

### III.

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. § 416.920 (2000), the ALJ found:

1. White has not engaged in substantial gainful activity since the alleged onset of disability;

2. White's panic disorder with agoraphobia (by history) is a severe impairment, based upon the requirements in the Regulations. (20 C.F.R. § 416.921) which does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. White apparently does meet the "A" requirements for Listing 12.06. However, for the "B" requirements, "None," "Moderate," "None," and "None." As the claimant does leave his home on occasion, he does not meet the "C" requirements of listing 12.06;

3. White's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision;

4. White has the following residual functional capacity: no exertional limitation. Employment must be a low stress position with little public contact;

5. White has no past relevant work (20 CFR § 416.965);

6. White is a "younger individual" (20 CFR § 416.963);

7. White has a "high school education" (20 CFR § 416.964);

8. White has no skills from any past relevant work. (20 CFR § 416.968);

9. White has the residual functional capacity to perform a significant range of work at all exertional levels (20 CFR § 416.967);

10. Although the exertional limitations do not allow him to perform the full range of heavy work, using Medical–Vocational Rule 204.00 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform, such as, at the light exertional level, a file clerk, with 261,000 jobs in the national economy and 1,600 jobs in the regional economy, and a meter reader, with 85,000 jobs in the national economy and 1,750 in the regional economy; at a medium exertional level, a laundry worker, with 375,000 in the national economy and 2,300 jobs in the regional economy, and a kitchen worker, with 950,000 jobs in the national economy and 6,200 jobs in the regional economy; and at the heavy exertional level, a truck unloader, with 275,000 jobs in the national economy and 2,200 jobs in the regional economy; and

11. White was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(f)).

IV.

White argues that: (1) the record does not contain substantial evidence that he was significantly better when he was treated; (2) the ALJ exceeded his expertise in determining that his condition would not be severe if undergoing treatment; and (3) he should not be penalized for not seeking treatment because he had no insurance or income to pay for it.

A.

The evidence of record includes:

1. A February 17, 1998 report from Olga E. Gioulis, M.S., a licensed psychologist, indicating a diagnosis of agoraphobia without a history of panic disorder.

2. A March 23, 1998 report from Ms. Gioulis indicating that White's symptoms include "nausea, muscle tension, and recurrent thoughts of 'I am going to be sick.'" She reports that White has experienced vomiting at the bus stop when he attempted to return to school and that these bouts of vomiting lasted all day and sometimes two days. She recommended to his treating physician, Itikana Shome, M.D., that consideration of home-schooling might be advisable.

3. An April 27, 1999 report from United Summit Center indicating a diagnosis of panic disorder with agoraphobia and a GAF rating of 45.

4. A September 10, 2000, report from Morgan A. Morgan, M.A., under the direction of Ronald Pearse, Ph.D., licensed psychologist, indicating a diagnosis of panic disorder with agoraphobia. Morgan also indicated that White was able to care

for his own personal needs, visited with friends and family on the telephone, and his concentration, persistence, pace, immediate and recent memory were all within normal limits.

5. A March 1, 2001 report from Sid Hosseini, D.O., staff psychiatrist, indicating a diagnosis of "provisional bipolar disorder type I, rapid cycling" and panic disorder with agoraphobia. Hosseini prescribed a mood stabilizer, Depakote.

6. An August 30, 2001 report from Ms. Gioulis indicating a diagnosis of panic disorder with agoraphobia and generalized anxiety disorder. An August 30, 2001 Mental Impairment Residual Functional Capacity assessment indicating marked limitation in the ability to keep regular attendance and work in proximity to others as well as a Psychiatric Review Technique indicating marked limitation in restriction of activities of daily living and maintaining social functioning; moderate limitation in maintaining concentration, persistence and pace; and extreme limitation in repeated episodes of decompensation. She further noted that White "might benefit from another trial of medication and psychotherapy."

Ms. Gioulis noted on the Psychiatric Review Technique that White met Listing 12.06 entitled Anxiety–Related Disorders evidenced by recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week.

In addition to the medical reports, the record contains White's testimony at the hearing indicating:

> If it gets really bad, I'll go into my little walk-in closet and I'll be in there for a couple of days, just for the closeness of not having to experience anything, not hearing the TV, not hearing what's going on outside, and I'll just be in there

for a couple days... I'll go to the bathroom, because the closet is right next to the bathroom, and before I'll go in there, I'll grab a couple bottles of water, and I'll grab like cans of vegetables, and like some cans of ravioli, or whatever I decide to bring in there. And I'll eat it right out of the can.

At the hearing the ALJ asked:

Q. All right. How often does—how often do you have some kind of a panic attack?

A. Daily. I have one every day. And not just one sometimes, on a daily average I think I may have even two or three, but not very bad ones....

■ It is clear that the evidence in the record indicates that White suffers from panic and anxiety disorders and experiences serious symptoms of agoraphobia. Nevertheless, the ALJ determined that, if White were on medication and undergoing treatment, he would be capable of being a member of the workforce. However, the ALJ offers no analysis of the evidence in the record on which he relied in making this decision. Significantly, the record indicates that, even though White took Paxil during the early stages of his developing conditions, the medication did not control the symptoms entirely and he was not able to remain in school.

Furthermore, the record also reveals that White's condition has continued to worsen and no medical provider or examining physician has suggested that medication and/or treatment would control his panic and anxiety disorder to the extent necessary to permit him to be a productive member of the workforce. Accordingly, the Magistrate Judge determined that the ALJ erred in finding that medication and treatment would permit White to become a capable member of the work force. The Court agrees.

## B.

■ Because the record contains substantial evidence indicating White suffered from anxiety and panic disorders with agoraphobia, the Magistrate Judge determined that the ALJ should have ordered a psychological examination and further development of the record with respect to the possibility of a mental impairment prior to rendering a decision.

42 U.S.C. § 421(h) provides:

An initial determination under subsection (a), (c), (g), or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner of Social Security has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

The Magistrate Judge found that the ALJ failed to call upon a psychologist or a psychiatrist to perform a psychological or psychiatric review technique or to complete a psychological residual functional capacities assessment and erred in substituting his own opinion for that of a medical professional. Thus, the Magistrate Judge determined that, because the ALJ failed to follow 42 U.S.C. § 421(h) when he did not make "every reasonable effort to ensure that a qualified psychiatrist or psychologist ... completed the medical portion of the case review and any applicable residual functional capacity assessment" prior to rejecting White's claim, he committed a reversible error. Accordingly, the Magistrate Judge recommended this matter be remanded to the Commissioner for further proceedings, specifically the development of White's claim of mental impairment due to agoraphobia, panic attacks and anxiety attacks. The Court agrees.

## C.

■ White also argues that the ALJ erred in finding that he had "no limitations in activities of daily living, moderate limitation in his social functioning, no limitations in his concentration, persistence and pace and no limitations with respect to 'repeated episodes of decompensation, each of an extended duration'" and therefore did not meet the criteria of 12.06. The Magistrate Judge found that determining whether White meets the criteria of 12.06 is dependent on the development of a complete mental history and assessment of White's impairments. Accordingly, the Magistrate Judge determined that, until a qualified psychiatrist or psychologist completes a medical review of White's case, a decision with respect to Listing 12.06 is premature. The Court agrees.

## V.

Therefore, it is **ORDERED** That Magistrate Kaull's Report and Recommendation be accepted in whole and that this civil action be disposed of in accordance with the recommendation of the Magistrate. Accordingly,

1. The plaintiff's motion for Summary Judgment (Docket No. 16) is **GRANTED–IN–PART;**

2. The defendant's motion for Summary Judgment (Docket No. 10) is **DENIED;**

3. This civil action is **REMANDED** to the Commissioner for further proceedings consistent with the Magistrate Judge's recommendation, specifically the development of White's claim of mental impairment due to agoraphobia, panic attacks and anxiety attacks; and

4. This civil action is **DISMISSED WITHOUT PREJUDICE** and **RETIRED** from the docket of this Court.

The Clerk of Court is directed to enter a separate judgment order. Fed.R.Civ.P. 58. If a petition for fees pursuant to the Equal Access to Justice Act (EAJA) is contemplated, the plaintiff is warned that, as announced in *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), the time for such a petition expires ninety days thereafter. The Clerk of the Court is directed to transmit copies of this Order to counsel of record.